Greve v. Coffin.

---

Mary Greve

*vs.*

William Coffin.

As appeared of record L. G. became owner in fee of certain land, Nov. 7, 1854. July 5th, 1855, L. G. made a deed to M. G., containing a description of land agreeing in some respects with the description of the land so owned by L. G., but so imperfect that it is claimed not to designate any particular tract. March 25th, 1867, L. G. made another deed to M. G., containing a correct description of said land so owned by L. G., and granting and releasing to M. G. all his (L. G.'s) right, title and interest therein and thereto. The latter deed contains this language, viz. . " This deed is made to correct description, and to confirm in M.

G. title to land intended to have been described in, and deeded by, the deed of July 5th, 1855." *Held*, That the two deeds, taken together, operated to pass the title to said land. *Held, further*, That no *ad valorem* stamp was required on the latter deed ; that the fifty cent stamp affixed thereto, as upon a contract or agreement, was, at any rate, sufficient.

February 16th, 1855, L. G. executed and delivered to M. H. S. a power of attorney, by which he constituted M. H. S. his lawful attorney, with these powers, viz. : " for me and in my name, to purchase all kinds of goods, wares and merchandize, to execute all kinds of notes, and obligations therefor ; also, for me, and in my name, to sell goods, or barter the same, and receive pay therefor; to collect, deposit, draw for, and exchange money ; also, to buy and sell real estate, and in my name to receive and execute all necessary contracts and conveyances therefor. And further, to do all things necessary to the transaction of a general mercantile trading, money loaning, and other lawful and proper business. *Held*, That this power did not authorize M. H. S. to sell and convey land, to which, *as appeared of record*, L. G. acquired title *before* the power of attorney was executed.

*Hill vs. Edwards*, 11 *Minn.*, 29, followed, and applied as to the effect of a conveyance of mortgaged premises by a mortgagee.

Under *sections* 139 *and* 140, *p.* 186, *Gen. Stats.*, it is only a tax deed, made when the land sold *has not been redeemed*, which is made *prima facie* evidence of title, and the party claiming under the tax deed must show that the land had not been redeemed when the tax deed was made, before such tax deed can be received as *prima facie* evidence of title under the sections mentioned.

Under *sec.* 143, *page* 187, *Gen. Stats.* when land sold for taxes has been charged on the duplicate in any other name than that of the rightful owner, the party relying upon a tax deed as *prima facie* evidence of title, must show that the taxes for which the land was sold were due and unpaid at the time of the tax sale.

A judgment was rendered in this cause, by the District Court for Ramsey county, in favor of the plaintiff, after a trial before the Court, without a jury. The defendant removes the cause to this court by appeal. A sufficient statement of the case will be found in the opinion of the Court.

ALLIS & WILLIAMS for Appellant.

Greve v. Coffin.

Brisbin & Palmer for Respondent.

*By the Court*—Berry, J.—This is an action in the nature of ejectment, in which the plaintiff must recover, if at all, upon the strength of her own title. It is proper then to inquire first, whether she has made out title in herself; if she has not, the case is at an end ; if she has, then we have to look further to see what rights the defendant has established. It appears that Levi Greve became owner in fee of the premises in controversy, on the 7th day of November, 1854, by deed duly recorded on that day ; on the 5th day of July, 1855, he executed and delivered to the plaintiff, Mary Greve, a deed purporting to convey certain premises, the description of which agrees in some respects with the description of the land in dispute found in the complaint, and varies from it in other respects. On the 25th day of March, 1867, Levi Greve executed and delivered to Mary Greve another deed, granting and releasing all his right, title and interest in the premises described in the complaint. The latter deed contains this language : "This deed is made to correct description, and to confirm in Mary Greve title to land intended to have been described in and deeded by" the deed of July 5th, 1855. It is claimed by the defendant that the deed of July 5th, 1855, is inoperative and void, because the description is so imperfect that it does not designate any particular tract of land.

The case comes up here as upon a bill of exceptions. It does not appear that all the evidence introduced before the District Court is reported here, nor are we furnished with any map or plat. Under these circumstances we. are not able to say that the learned judge below, in finding that " Levi Greve *conveyed* the said premises to the said Mary Greve in fee," by the deed of July 5th, was not supported

by the evidence in the case. But admitting that the description in the deed of July 5th was so imperfect that it did not convey the land described in the complaint, or any land whatever, we are of opinion that the imperfection was corrected by the deed of March 25th, 1867, so that the two, taken together, would operate to pass the title to the premises described in the complaint. To this view it is objected that the deed of July 5th was absolutely *void* on its face for uncertainty of description, and that therefore it could not be confirmed. But this is not a fair statement of the case. If the deed of July 5th, on account of the imperfection of the description was not effectual to pass a title, still, if the imperfection arose from mistake, the deed could be reformed in a court of equity so as to make it speak the intention of the parties, and pass the title which it was designed to pass. If it could be reformed through the action of a court, it certainly could by the acts of the parties. The deed of March 25th does not then operate to *confirm* the *deed* of July 5th. It operates, in its own language, to correct description, and to confirm in Mary Greve *title* to land intended to have been described in and deeded by the deed of July 5th. It is also said that the deed of March 25th is invalid because not properly stamped. It is admitted that the value of the property was $6000, while a fifty cent stamp only was affixed to the deed. By the United States statute (act of July 1st, 1862,) any deed  *  *  whereby any lands, tenements or other realty *sold* shall be granted  *  *  or otherwise conveyed  *  *  where the consideration or value exceeds one hundred dollars " is subject to an *ad valorem* stamp duty. In our opinion the word *sold* is an emphatic word, and the *ad valorem* duty is only required to be affixed to deeds of lands &c. *sold*, in the ordinary

Greve v. Coffin.

sense of the word.  In this case the *sale* was made July 5th, 1855, before the stamp act was passed.

There was no *sale* in March, 1867; what was done then was simply to perfect the evidence of the former sale.  3 *Parsons on Contracts*, 326–8 *and notes.*  In England under a statute similar, it is held that a deed of confirmation of an inoperative deed that was duly stamped, does not require an *ad valorem* stamp, as for the sale of the property.  *Doe vs. Weston,* 2 *Ad. & El., N. S.* 250 (42 *E. C. L.* 660.)  But if this was not so, what would be the *consideration* or *value* in this case by which the amount of stamp duty required is to be determined?  The *consideration* expressed is $1, and there is no evidence that it was any greater sum.  The *value* of the interest conveyed, what was it?  Apparently nothing.  If Levi Greve was simply reforming the first deed, he was only doing that which he could be compelled to do gratuitously by legal proceedings.  His interest possessed no value to him.  What he held, he held in trust for the benefit of the plaintiff, Mary Greve.  We are clear, there-fore, for these, as well as for other reasons not necessary to be mentioned, that no *ad valorem* stamp was required in this case.  The stamp affixed to the deed as a contract or agreement was at any rate sufficient.  3 *Parsons Con.,* 327–8.

Such is the plaintiff's title, and in our opinion, it is a good title, and sufficient to enable her to sustain this action unless the defendant has made out a better.  On the 16th day of February, 1855, Levi Greve, then being the owner of the premises, made and delivered to Moses H. Schwartzenbergh a power of attorney, by which he constituted said Schwartzenbergh his lawful attorney, with these powers: "for me and in my name to purchase all kinds of goods, wares and merchandize, to execute all kinds of notes and obligations therefor; also for me and in my name to sell

goods, and barter the same, and receive pay therefor, to collect, deposit, or draw for and exchange money, also to buy and sell real estate, and in my name to receive and execute all necessary contracts and conveyances therefor. And further to do all things necessary to the transaction of a general mercantile trading, money loaning, and other lawful and proper business." Claiming to act under this power the attorney executed a conveyance of the premises on the 26th day of June, 1855, to Nathan Schwartzenbergh, who on the 14th day of April, 1856, conveyed the same to Moses Lovenstein. Lovenstein, July 24th, 1857, conveyed to Nininger, who on the 19th day of August, 1857, conveyed an undivided half to Goldsmith, and on the 19th day of January, 1858, Goldsmith and Nininger conveyed the premises to the defendant. It will be observed that Levi Greve acquired title to the land in controversy before the execution of the power of attorney, and that this fact appeared of record. It is insisted by the plaintiff, that the power of attorney authorized the attorney to sell and convey such lands only, as he should buy under the power. We are inclined to the opinion that this is the proper construction, but at any rate, we have no doubt that the power did not authorize the attorney to sell and convey lands, to which, as the proper record showed, the principal had acquired title before the execution of the power. If this is not so, then the proper construction is that contended for by the defendant's counsel, namely, that the power authorized the attorney to sell any real estate of his principal, whether owned by the principal at the time of, or prior to the execution of the power, or purchased by the attorney under the power. This construction would, as suggested by the learned Judge below, allow the attorney to sell the principal's homestead, and if this construction be sound, the power would also al-

low the attorney to sell the principal's household goods, his wearing apparel, and any other goods, wares or merchandize belonging to him.   But we think this would be an unnatural construction of the power.   It seems to us, as to the Court below, that the power had reference to a business to be inaugurated.   The business was one in which the attorney was to make the *original investments*, and to sell the goods, or real estate acquired by such investments. This appears to us to be the natural signification of the language used in the connection in which it is used.   *See Mills vs. Carnley,* 1 *Bosworth,* 159.   It is urged that this construction would furnish a bad and unreasonable rule, because it would require the purchaser to ascertain whether the attorney had *bought* the real estate, which he assumed to sell, and that this is a matter which it would be almost if not quite impossible to determine with certainty.   Whether this would be so, in any instance, or not, we need not enquire.   In cases like this, which we are considering, no such difficulty would present itself, for the records of title (as appears by the finding) show that the premises in question were purchased by Levi Greve, *before* the power of attorney was made.   It is further urged that the *revocation* of the power, shows that the construction contended for by the defendant, is that which was put upon the power by Levi Greve, the principal himself.   The instrument of revocation contains this recital: "Whereas, Levi Greve * * in and by a letter of attorney did * * appoint Moses Schwartzenbergh * * my attorney for me and in my name to sell and convey lands belonging to me."

The instrument then proceeds to revoke "said letter of attorney, and any and all letters of attorney, by me heretofore executed to the said Moses H. Schwartzenbergh, and all power and authority thereby given or intended to be

given to the said Moses H. Schwartzenbergh." The language specially relied on by the defendant in the revocation is the clause, " *to sell and convey lands belonging to me,*" and it is argued that these words refer to and construe the expression to " *sell real estate* " in the power. If the revocation has reference to the power, as we presume is the fact, it has certainly not attempted to recite, or specifically to refer to all nor more than one of the many objects embraced in the power, although it revokes the power *in toto.* It contains no mention of the authority to buy or sell goods, or to buy real estate, or of the other purposes for which the attorney was appointed. This shows that it does not *pretend* to describe, with any approach to accuracy or definiteness, the character of the authority conferred upon the attorney, and for this reason we think it is not entitled to the weight which is sought to be given to it, as an authoritative and conclusive construction of the original power. Its language, though not fully descriptive of the nature of the power, is not inconsistent with our construction. The power did confer the right " to sell and convey lands belonging to " Greve, but it does not follow that the attorney therefore had power to sell and convey *all* lands belonging to Greve ; while, as we hold, he had power at least to sell and convey such lands belonging to Greve as had been acquired by virtue of the power. Our opinion then is, that the power of attorney did not authorize the sale and conveyance of the premises in controversy, and that the deed, purporting to be made in pursuance thereof, was entirely nugatory as a conveyance.

It appears that on the 8th day of April, 1855, which was prior to the conveyances to Nathan Schwartzenbergh and to the plaintiff, Levi Greve mortgaged the premises in question to John Nininger, to secure the payment of $1090, due

Greve v. Coffin.

in two months from the date of the deed, and that on the 1st day of September, 1855, the mortgage was assigned to Nathan Schwartzenbergh. There was no evidence going to show whether the mortgage has ever been paid or not. But the defendant's counsel says, that "when Nathan Schwartzenbergh subsequently conveyed these premises to Moses Lovenstien, on the 14th day of April, 1856, he was the assignee, owner and holder of all the right, title and interest and estate granted by the mortgage deed. We claim that all his right, title, interest and estate under the mortgage deed passed to his grantee, and subsequently from this grantee, through the other grantees, to the present defendant, who is now in the actual possession and enjoyment of the premises." And, as we understand it, the defendant upon this state of things invokes the doctrine held in *Pace vs. Chadderdon*, 4 *Minn.*, 503, that "a mortgagee in possession of mortgaged premises lawfully acquired after condition broken, cannot be dispossessed by an action of ejectment against him." But as it occurs to us, the first question is, Was there any assignment of the mortgage by Nathan Schwartzenbergh? It is not pretended that he ever made any formal assignment of it. In *Hill vs. Edwards*, 11 *Minn.*, 29, it was said by this court, that the mortgagee has no *conveyable* interest in the mortgaged premises until foreclosure sale, or at least until entry, after condition broken, and a conveyance of the premises by the mortgagee to a third party, unless at least intended to operate as an assignment of the mortgage, and transfer of the mortgage debt, is entirely inoperative, and such intention must be made to appear.

This doctrine was also followed and applied in *Johnson v. Lewis*, 13 *Minn.*, 364. Now while in the case at bar it is found by the court below, that the defendant, at the com-

mencement of this action, was in possession of the premises described in the complaint, *claiming title thereto,* and also at a time when a certain tax was assessed in 1864, (as we suppose), there is nothing to show that Nathan Schwartzenbergh, or any of those who claim under him, except the defendant, as found above, were ever at any time in possession of the premises. Nor would any of them have constructive possession under the deed executed by the attorney, for, as we have already determined, that deed was made without authority, and was ineffectual as a conveyance. It does not appear that the mortgage has ever been foreclosed, and, as we have seen, there is nothing to show that Nathan Schwartzenbergh ever entered into possession of the land, either before or after condition broken, though it appears that at the time when the mortgage was assigned to him, September 1, 1855, which was also *before* he executed the deed to Lovenstein, the mortgage was nearly three months past due, and of course its condition broken, unless it had been paid or satisfied, or perhaps extended. So that under the rule enunciated in *Hill v. Edwards,* Nathan Schwartzenbergh had no *conveyable* interest in the premises at the time of his conveyance to Lovenstein, and his conveyance of the premises was inoperative " unless it was intended to operate as an assignment of the mortgage," and transfer of the mortgage debt, and as further held, " such intention made to appear." Then the question is, was the conveyance intended to operate as an assignment of the mortgage and transfer of the mortgage debt, and is that intention made to appear ? We think this question must be answered in the negative. We discover nothing indicating such an intention. There was, as before remarked, no formal assignment made. It does not appear that either note or mortgage were ever delivered by

Nathan Schwartzenbergh to his grantee, or that they were ever in the hands or control of any of those who claim under him.  So then not only no intention to assign is made to appear, but the circumstances of the case, so far as our information extends, are not easily reconciled with the existence of such intention.  The facts found indicate with reasonable certainty to our minds, that the intention of Nathan Schwartzenbergh was to convey the fee simple of the premises, and that the same intention ran through the whole series of conveyances following, including that made to the defendant.  As then the defendant is not shown to be a mortgagee, or an assignee of a mortgagee, or his assigns, he is not in a position to set up the mortgage in answer to this action.

Finally, and as one other source and evidence of title, the defendant relies upon a tax deed, which is found by the Court below to have been executed, acknowledged and delivered to him by the auditor of Ramsey County, on the 29th day of August, 1867.  The tax sale appears to have been made on the 9th day of June, 1865, for taxes of 1864. *Sec.* 139, *p.* 186, *Gen. Stat.*, provides that if land sold for taxes has *not been redeemed* within the time allowed by law, the county auditor shall on the production of the certificate of purchase, &c., execute and deliver to the purchaser, &c., a deed of conveyance for the tract sold.  *Sec.* 140 enacts that "the deed *so made* by the auditor, shall vest in the grantee, his heirs and assigns, a good and valid title, both in law and equity, and shall be received in all courts as *prima facie* evidence of a good and valid title in such grantee, his heirs and assigns."

We agree with the opinion of the learned Judge below, as to the construction of these sections of the statutes.  The auditor is authorized to make the deed, only in case the

land sold has *not been redeemed*, and it is only a deed *so made*, that is to say, made when the land *has not been redeemed*, which is declared *prima facie* evidence of title. If then a party wishes to rely upon such tax deed as *prima facie* evidence of title, he must show that the land sold *had not been redeemed* when the tax deed was executed and delivered. No such showing was attempted in this case, and for this reason the tax deed does not establish title in the defendant. We also agree to the views expressed by the learned Judge in reference to *Sec.* 143, *p.* 187, *Gen. Stat.*, which provides that "no sale of any land * * for delinquent taxes shall be considered invalid on account of its having been charged on the duplicate in any other name than that of the rightful owner, *provided*, that such land or lot is in other respects sufficiently described on the duplicate, and the taxes for which the same is sold are due and unpaid at the time of such sale." It appeared by admissions in this case, that the "name of the defendant was put upon the tax list, as owner of the said land, upon the list under which the tax sale referred to in said conveyance took place, and that his name appeared also in the advertisement of such sale of said land, and that at the time of assessing such tax, he was in possession of said land claiming title thereto." As remarked in the opinion filed below, "here is a very clear indication of the intent of the legislature, that the fact of charging land upon the tax list in the name of a person other than the true owner, shall invalidate the tax sale unless the lands be otherwise correctly described, and the taxes be due and unpaid at the time of such sale."

The deed introduced in evidence here, then, was *prima facie* evidence of title. (This remark is, of course, subject to what is before said upon the other point.) It was liable to be overcome, however, by proof of such facts as render-

ed the sale invalid. The proof of such a fact was given in the admissions above referred to, liable, of course to be rebutted by evidence that the lands were otherwise properly described, and that the tax was due· and unpaid. No such evidence was given in the case. The tax lists were not produced, nor any of the records in the auditor's office. For these reasons, also, we think the defendant failed to make out a tax title. This disposes, we believe, substantially of all the positions taken by the defendant in his defense. The plaintiff has, in our opinion, shown title, which the defendant has been unable to overcome, and the judgment in her favor is therefore affirmed.