ANDREW R. KIEFER

*vs.*

GRIFF H. ROGERS and wife.

C sold R land subject to a mortgage for $4,000, and for $2,250 of the purchase price. R agreed to give a mortgage on other land. Before its execution, however, C told R that he should want other property put in the mortgage and R told him he might put in any other property. C thereupon caused this property to be put into said mortgage, and the mortgage presented to R, who executed it without reading it, and in ignorance that this property had been put into it, and it was at once recorded. Plaintiff thereafter bought said land of R, relying upon his representation that there was no other incumbrance upon it than the mortgage for $4,000. *Held,* that R's ignorance of the existence of said second mortgage being the result of gross negligence, the rule of equity applies, that a false representation, founded on mistake resulting from gross negligence, is a fraud. *Held,* also, that the maxim *caveat emptor* does not apply to the plaintiff, because of the fact that the mortgage was upon record. He had a right to rely upon the representation of the owner, upon the assumption that he knew the situation of his own property and truly represented it.

It was not necessary to entitle plaintiff to a decision that he should

Kiefer v. Rogers.

have made a tender of a reconveyance before the commencement of the action, and kept it good by a deposit of the deed with the court.

Plaintiff at the trial brought into court and tendered to R a quit-claim deed of said land, the consideration being therein stated at $500, with a special covenant that the land was free from all incumbrances by, from, or under plaintiff, and that he would warrant and defend the title to the same against all lawful claims arising by, from, or under him. *Held,* sufficient.

It is no objection to plaintiff's right to maintain this action for rescission of the sale, that R offered, before suit brought, to indemnify him against said incumbrance and to procure a release thereof.

At the trial, R produced and tendered to plaintiff a release of said incumbrance, which was refused. *Held,* that the district court exercised a sound discretion in refusing to permit the defendant to thereupon amend his answer and plead such tender in bar of the action. Since plaintiff, upon rescission, was entitled to the property he parted with, or the proceeds if to be traced, there was no error in the action of the court below in charging property belonging to R's wife with so much of the proceeds of plaintiff's property, exchanged with R for this property, as had been used in the purchase for Mrs. R of her property aforesaid.

In the month of March, 1870, one Colter, being then the owner of a tract of land in Washington county, subject to a mortgage for $4,000, sold and conveyed the same to the defendant Griff H. Rogers, who agreed to assume the mortgage and to secure the unpaid purchase money by a mortgage for $2,250 on other lands belonging to him. Before the execution of this last mortgage, however, Colter told Rogers that he should want additional lands included in it, whereupon Rogers told him to insert therein any lands he pleased. Colter accordingly directed the conveyancer by whom the mortgage was to be drawn, to insert therein a description of the lands sold to Rogers. The conveyancer did so, and took the mortgage, thus prepared, to Rogers, who executed without reading it. This mortgage for $2,250 was recorded on the 26th March, 1870.

On the 24th June, 1870, Rogers, being in treaty for the

exchange of a portion of the land purchased from Colter for a stock of goods and certain leasehold property in Ramsey county, belonging to the plaintiff, stated and represented, in answer to plaintiff's inquiry, that said land was free from all incumbrances except the mortgage for $4,000, and proposed to give plaintiff a bond of indemnity against this mortgage, if the exchange should be made. At this time Rogers had never been informed by Colter, and had no actual knowledge that said land was subject to the mortgage of $2,250 made by him to Colter. The plaintiff, relying entirely on Rogers' statement, agreed to the exchange, which was thereupon made, and the proper instruments of conveyance executed, including the bond of indemnity to plaintiff against the $4,000 mortgage. The transaction between Rogers and the plaintiff took place at the city of St. Paul, in Ramsey county.

Early in July following, and soon after the delivery of Rogers' deed of the land to plaintiff, the latter discovered the existence of the mortgage for $2,250, and made complaint to Rogers, who from time to time promised that he would obtain a release from Colter, and would "fix the matter up." No such release was obtained, and the plaintiff told Rogers that he had been defrauded and should rescind the contract. About this time Rogers offered to indemnify the plaintiff against the $2,250 mortgage, but plaintiff refused to accept any indemnity. No instrument of indemnity was presented or tendered by Rogers to plaintiff at the time of the offer, or at any time. Before the commencement of this action Colter agreed with Rogers to release the mortgage, but afterwards refused, and no release was executed by him.

On the 22d July, 1870, and while Rogers was promising to fix up the matter, Rogers exchanged the leasehold property conveyed to him by plaintiff, together with certain real estate of his wife, for other real estate, and caused the latter prop-

erty to be conveyed to his wife, who was seized thereof at the commencement of this action, in which she was made a defendant.

On the 20th July, 1870, the plaintiff brought this action, praying that his conveyance to Rogers might be set aside, that the real estate conveyed to Mrs. Rogers might be decreed to be the property of the plaintiff, that the stock of goods might be returned to him and for general relief.

The action was tried by the court, a jury having been waived. During the trial the plaintiff brought into court, and tendered to Rogers, the bond of indemnity against the $4,000 mortgage, and also a quit-claim deed of the land conveyed to him by Rogers, duly executed and acknowledged by plaintiff and his wife, and with special covenants against the acts of the grantor. The consideration stated was $500, and the deed was duly stamped. The defendants refused to receive this deed, objecting to it that the consideration expressed was too small, and that the tender came too late.

The defendants at the trial tendered to the plaintiff a release by Colter of the $2,250 mortgage, and asked leave of the court to amend their answer by inserting an allegation of Colter's willingness to execute a release, and of the actual execution and tender of such release. The plaintiff refused to accept the release tendered, and the court refused to allow the amendment.

Besides the facts already stated, the judge also found that the plaintiff knew of Rogers' intention to dispose of the leasehold property for the real estate for which he exchanged it; that Rogers was solvent at the time of the exchange with plaintiff, and at the commencement of the action, and that the lands embraced in the mortgage for $2,250, given by Rogers to Colter, other than the land conveyed by Rogers to plaintiff, were and are of greater value than all the incumbrances thereon.

Judgment was ordered and entered for the plaintiff, that he recover the value of the stock of goods transferred to Rogers, that the deeds executed between plaintiff and defendants in effecting their said exchange be cancelled, that plaintiff have a lien on the real estate conveyed, as before mentioned, to Mrs. Rogers, to the amount of $3,600, the value of the leasehold property conveyed by him to Rogers and exchanged by Rogers for said real estate, and that such lien be enforced by levy and sale.

From this judgment the defendants appeal.

H. H. FINLEY and DAVIS & O'BRIEN, for Appellants.

JOHN B. & W. H. SANBORN, for Respondent.

*By the Court.*—RIPLEY, CH. J.—The court below finds that the plaintiff bought the property in question, relying upon the representation of the defendant that there was no other incumbrance thereof than the mortgage for $4,000. Although the defendant was then ignorant of the existence of the incumbrance thereon of the mortgage for $2,250, there is no doubt but that, under the circumstances, his representation must be treated as fraudulent, as much so as if he had told a willful falsehood.

The court finds that said record incumbrance arose as follows:

One Colter had sold the defendant the property in question, subject to said mortgage for $4,000, and for part of the purchase money, viz.: said $2,250 defendant had agreed to give a mortgage on other land. Before its execution, however, Colter told defendant he should want other property put in the mortgage, and defendant told him he might put any other property in it, whereupon said Colter caused the property in question to be inserted therein and the mortgage to be presented

Kiefer v. Rogers.

to defendant, who executed without reading it, and it was at once recorded.

Defendant's ignorance of the existence of such incumbrance was, therefore, the result of gross negligence ; and, in the view of a court of equity, a false representation, founded on mistake resulting from such negligence, is a fraud. *Smith vs. Richards,* 13 *Peters,* 26, 38.

It is said, however, that this second mortgage was, in point of fact, no incumbrance on the property in question, because neither the defendant nor any one else ever directed the conveyancer to insert the description of the property in question therein, and because the uncontradicted testimony of defendant and Colter goes to show that none of the parties intended to incumber the land in question.

It is not necessary to consider the question as to what the right of the plaintiff in this case would have been, had the property been so inserted by the scrivener's mistake, neither defendant, nor Colter intending that he should do so, for the evidence in our judgment by no means answers the defendant's description of it. The uncontradicted testimony of Colter, for example, is, that he " gave Hoffman (the scrivener,) instruction to insert the description of the land sold plaintiff in the $2,250 mortgage."

The court below finds that plaintiff wholly relied upon these representations aforesaid of defendant in concluding said purchase, and would not have bought the property had he known of the existence of said incumbrance.

The defendant contends that, as the records were open to plaintiff, and he had an opportunity to examine the title before purchasing, it was his duty to do so, and he not having done so, the rule *caveat emptor* applies.

If the defendant instead of positively asserting that there was no other incumbrance on the property, had informed the

plaintiff of the facts found by the court, it is beyond doubt
that plaintiff would have refused to buy until he had
searched the records, and ascertained that the mortgage
did not cover the farm he proposed to buy. But since the
defendant chose to substitute his own positive unqualified
assertion that no such mortgage existed, it does not lie in his
mouth to say that it was the plaintiff's own folly to believe
him, instead of going to Stillwater to ascertain whether or not
he was stating the truth. The purchaser confided in the
statement of the defendant, upon the assumption that the
owner knew his own property, and truly represented it,
(*Smith v. Richards, supra*,) and nothing could be more legitimate
than such an assumption, for there is certainly no presumption
in favor of ignorance and dishonesty. *Vide Campbell v. Whit-
tingham*, 5 *J. J. Marsh*, 96.

It is further objected, however, that to entitle the plaintiff
to a rescission, the tender made by him at the trial of a re-
conveyance should have been made before the commencement
of the action, and kept good by a deposit of the deed with the
court. Since, however, the plaintiff's right to rescind springs
out of the defendant's fraud, no such tender was a condition
precedent to his right to apply to a court of equity for the
enforcement of that right. A bill to rescind a contract on the
ground of fraud, it is held may be maintained without a pre-
vious offer to restore what the plaintiff received. *Martin v.
Martin*, 35 *Ala*. 560 ; *Garner v. Leverett*, 32 *Ala*. 410.

It is further objected that the deed tendered at the hearing
was in itself defective and insufficient as the basis of a decree
for the relief prayed. It is a quit-claim with covenant against
incumbrances arising by, from, or under him, and warranty
against all lawful claims so arising. It is said that this, if
accepted, would not leave defendant's title as it was prior to

Kiefer v. Rogers.

the conveyance from defendant to plaintiff. · It is not stated, and we cannot see, why it would not.

The consideration stated in the deed is 500 dollars. This, it is said, is insufficient; but, as this is not a sale and conveyance by plaintiff to defendant, but merely to revest the legal title in defendant of land in which, as he avoids the contract for fraud, the plaintiff claims no beneficial interest, a nominal consideration would have been enough.

It is also objected, that the lands as therein described are in Ramsey county, whereas they are in Washington county.

This is immaterial ; the description of the land by metes and bounds locates it with such exactness that the error in the name of the county is patent in the face of the deed, and could not mislead.

The deed, as copied in the paper book, does not appear to have been stamped. The court below, however, finds that it was duly stamped, and as the stamp is no part of the instrument, the fact that what purports to be a copy of the deed does not show that the deed was stamped, does not tend to prove that the finding of the court is against the evidence.

As to these two last objections, however, it is also sufficient to say that they were not made at the trial,

The defendant's only objection to the tender then was, that it came too late, and that the consideration was too small.

The court below finds however, that before the commencement of the action, defendant offered to, indemnify plaintiff against said incumbrance, and that plaintiff declined; and defendant also insists, (though the court does not so find,) that defendant also offered to procure a release of said incumbrance.

Taking it to be proved that he did, then defendant contends that, as equity always considers that as done, which ought to be done, it was the same to the plaintiff, that the release was

offered to be procured before suit brought, as if it had been handed to him at the time he bought the land ; or as if the incumbrance had never existed at all.

On this theory we do not see the importance of any offer to procure a release before suit brought  If defendant *ought* to have made an offer to procure a release, and equity always considers that as done which ought to be done, there would seem to be as much reason for considering the offer as made, though it were not, as for considering the release as actually executed.  The defendant's theory, it is moreover to be observed, requires this release to be considered as executed, in the face of the finding of the court below, that, though Colter at one time before the commencement of the suit promised defendant to release, yet that he afterwards refused to do so, and did not in fact execute any such release

It is enough, however, with reference to this ground of defence, that it proceeds upon an entire misapplication of the maxim in question.

Although, therefore, such release was actually produced at the trial, the case of *Davidson vs. Moss,* 5 *How., Miss.* 685, relied on by the defendant, is not in point ; for there a tender of the deed perfecting the title was pleaded in the answer.

The defendant, however, relies upon the reasoning by which the court, in that case, arrives at its conclusion, as sustaining his position that the court ought not to decree a rescission of this contract, the incumbrance being actually released before decree.

In that case the complainant brought his bill for relief from payment in full of the purchase price of a plantation and negroes on the ground of a false warranty of soundness of some of the negroes, and for an injunction against a foreclosure of a deed of trust given to secure such purchase money.  After answer the complainant filed an amended bill,

which stated, that, after the filing of the original bill, the complainant discovered that a large number of the slaves were the property of defendant's wife, and that the defendant fraudulently concealed the fact, and represented himself as the owner; that he would not have bought if he had been aware of it; that defendant had within a few weeks tendered deeds of himself and wife and children for the slaves, which he declined, considering himself as entitled to a rescission of the contract as to the eighteen slaves on account of the fraud.

The court were of opinion that, by analogy to the doctrine in cases of suits for specific performance, (in which unless time is of the essence of the contract, it is sufficient that the vendor is able to make a title before decree,) the deed in the case before it was a fulfillment of the contract, and the covenant for title was fully kept by having a capacity to convey at any time before decree.

The doctrine in cases of specific performance, however, goes upon the ground that time is not of the essence of the contract; that is, that a title at any time before decree was what the parties in effect bargained for. But the agreement in the case of an *executed* contract is express that the seller has a good title at the time of the transfer or conveyance.

There is no room, therefore, for any supposition that time was not of the essence of the contract, and the court, in *Davidson v. Moss*, seem to have overlooked this in saying that, so far as the principle is concerned, it made no difference that the contract was executed. The court admit that if the purchaser had sustained any damage in consequence of the fraud, the tender pleaded would have been no answer to the bill; but say that there was no proof of any loss or damage by the complainant in consequence of the defect alleged, and cite *Boyce v. Grundy*, 3 *Peters*, 210, as holding that, in the absence of such proof, if the party is able to make title when the bill

to rescind the contract is filed, and so answers, and duly sets out the title to be tendered, it may be a good answer to the bill.

The case, however, does not come up to that. It was a bill filed to rescind an agreement between Boyce and the complainant for the sale by Boyce to him of a tract of land in Tennessee, in which, by the agreement itself, four years' time was allowed to make a title. It was not only the case of an executory agreement, but of one in which time would hardly have been held of the essence of the contract.

The language of the court upon the point is that, since upon discovery of the fraud the complainant gave notice, " not of an intention to rescind, but of a claim for a deduction *pro rata,* and since time is expressly given to the extent of four years, to make title to the whole tract, we will not affirm that in the absence of any proof of positive loss from want of title in the interval, if the party had been able to make title when the bill was filed, and had so answered, and duly set out the title to be tendered, that it would have been a case for relief."

The principle of that case, therefore, is in our opinion inapplicable to a bill brought to rescind a conveyance on the ground of fraud, and the conclusion of the court, (in *Davidson v. Moss,*) that, though there may have been a fraud practiced by the vendor at the time of the contract the vendee has not sustained any injury and therefore is not entitled to the relief he seeks, is equally inapplicable to the case before us.

It is true that a false representation in respect of an immaterial fact, as it can occasion no injury, is no ground for relief. But this was a false representation of a most material fact. In consequence, the plaintiff was induced to buy property incumbered in the sum of $2,250 more than he supposed it was. That is certainly an injury.

If he had brought an action at law on the covenant against

incumbrances, it would not be pretended that a tender, at the trial, of a release, would entitle the defendant to a verdict. Yet that in effect is what is asked here. It is true that, even in cases of fraud, it is within the sound discretion of a court of equity under the circumstances of the case to refuse to rescind a contract, (2 *Story's Equity*, 694,) but we think the court below exercised a sound discretion in refusing the defendant leave to amend his answer and plead the tender in bar of this action.

If a contract ought not in conscience to bind one of the parties, as, if he was imposed on by the other party, a court of equity will interpose by setting aside the contract. *Hepburn v. Dunlop*, 1 *Wheaton*, 197.

" It has been further urged, (it is said in *Boyce v. Grundy*, 3 *Peters*, 210,) that the misrepresentation, if at all established, was not of a personal character susceptible of compensation or indemnity to be assessed by a jury. On this there may be made several remarks, and first, that, if the facts made out such a case, yet the law, which abhors fraud, does not incline to permit it to purchase indulgence, dispensation or absolution."

In the present case, however, as the release, if accepted when tendered, could in no sense be said practically to place the plaintiff in the same position as he would have occupied if the property had not been so encumbered when he bought it, it was no indemnity even in a pecuniary sense for the past.

It should seem that it hardly lay in the defendant's mouth to interpose any objection to the rescission of this contract. The plaintiff testifies, and the defendant does not deny, that, in answer to the plaintiff's inquiry as to whether there were any other incumbrances on the farm than the $4,000 mortgage, the defendant said, "No, if there was it was no sale."

Again, before the conveyance was executed he repeated that, "if, when the abstract came, any other incumbrance appeared, it should be no sale."

There is certainly no injustice in compelling the defendant to make his words good.

Plaintiff, on rescission was entitled to the property he parted with, or the proceeds if to be traced.

Hence there was no error in charging the property of Mrs. Rogers with so much of the proceeds of plaintiff's property sold by the defendant as had been used in the purchase of that property.

Order appealed from affirmed.