(Opinion published 51 N. W. Rep. 907.)

---

ISABELLA J. CARLTON *vs.* NEHEMIAH HULETT.

Argued Feb. 4, 1892.   Decided April 11, 1892.

**Evidence Supports the Findings of Fact.**—The findings of fact in this action, which was brought to set aside and cancel a mortgage upon real property, a foreclosure of the same by advertisement, and all record thereof, on the ground that said mortgage had been obtained by means of false and fraudulent pretenses and representations, examined, and *held* to have been supported by the evidence.

**One Asking Equity must Do Equity.**—A defrauded party applying to a court of equity for relief must be compelled to exonerate himself from all imputation of ratifying, in any degree, the fraud of which he complains.   He cannot be permitted to affirm as to a part of the transaction, and repudiate as to the residue, except in very special cases, where it is evident no injustice will be done.

**He must Restore What he Received.**—In an action of this character, the defrauded party cannot be allowed to retain the benefits of the transaction, and at the same time to cancel and annul the mortgage security. Such a proceeding would be at once a ratification and a repudiation, and these cannot concur in the same action. When such a case is presented, it is within the power, and it is the duty, of the trial court, to impose equitable terms upon the plaintiff as a condition to the granting of the relief demanded.

Appeal by defendant, Nehemiah Hulett, from an order of the District Court of St. Louis County, *Stearns,* J., made September 19, 1891, refusing his application for a new trial.

On February 14, 1874, Webster M. Carlton, since deceased, was the husband of the plaintiff, Isabella J. Carlton, and owned the north half of the southwest quarter of section five, (5,) in Township forty-eight (48) north, of Range fifteen (15) west, in St. Louis County, and thirteen lots fronting on Third street, in the Village of Fond du Lac, in that county. There was a dwelling house on one of the lots, and he and his family resided in it. The trial court found that he was then sick, and had been confined to his house all the winter; that he was poor, and had difficulty in procuring the necessaries of life; that there was then a past-due mortgage on all his real estate; that it and unpaid taxes amounted to $475. Defendant then was, and long had been, Treasurer of St. Louis County, and was often consulted by Carlton and wife regarding their business matters. They requested him to assist them in obtaining a loan of money to pay the mortgage and taxes. He thereupon offered to loan them the money, and stated to them that it was his custom to require a person obtaining a loan of money from him to buy of him some town lots, and include the price in the mortgage he took as security. He stated to plaintiff and her husband that he had a good tax title to ten lots on Minnesota Point, and that he would convey them by quitclaim deed to the husband for $200, and include the price in the mortgage; that the lots were worth that sum, and were increasing in value. Carlton and his wife believed and relied upon Hulett's statements, and were thereby induced to give him a mortgage on all their real estate for $675, due $300 on August 14, 1875, and the balance in three years,

with interest annually at the rate of twelve per cent.   He gave Mr. Carlton a quitclaim deed of the lots, and promised to pay the prior mortgage and taxes on their property.   He had just prior to this bought of one Thomas, the holder, the prior mortgage, at a discount of $58, which fact he concealed from the Carltons.

Defendant had no valid title to the lots on Minnesota Point.   He only had a tax deed of them, which was void on its face.   This court, in 1869, held a similar tax title invalid, in *Greve* v. *Coffin*, 14 Minn. 345, (Gil. 263,) and he knew of it.   With perfect marketable title the ten lots were then worth no more than $50.   There was no market for them, nor were they rising in value, and defendant then knew these facts.

In May, 1877, defendant foreclosed the mortgage under the power of sale therein, and bid in the property at the sale for the sum due on the mortgage and costs and taxes.   Twelve months passed, but no redemption was made.   Webster M. Carlton died testate, August 29, 1879, and his will was admitted to probate on April 21, 1890.   By it he devised and bequeathed all his property to the plaintiff, his widow, and appointed her sole executrix.   She first discovered in January, 1890, that her title to the ten lots on Minnesota Point was invalid and worthless.   By this action she asked that the mortgage and its foreclosure be adjudged fraudulent and invalid, and that they be canceled; that defendant account for the value of any part of the property sold by him; and that it be applied in payment of the money actually advanced by him to her husband; and for such other relief as should seem to the court equitable.   Defendant denied the fraud and misrepresentations, and pleaded the statute of limitation of actions.

The trial occurred June 22, 1891.   Six questions were submitted to a jury.   The fourth, fifth, and sixth were as follows.   The fourth and sixth were answered "*Yes*," the fifth was answered "*No*," by the jury.

4. Did the defendant, at the time of the delivery of the deed for the Minnesota Point lots, represent to the [husband of] plaintiff that the quitclaim deed conveyed a good title to said lots, and that such title was worth the sum of $200 ?

5. Were the representations of the defendant that the quitclaim deed for the lots conveyed a good title, and worth $200, true?

6. Did the plaintiff, [and her husband] at the time of executing the mortgage, rely on the representations of the defendant as to the title and value of the lots on Minnesota Point?

After the verdict on these questions was returned, the court heard further evidence, and found that Webster M. Carlton did not have notice in his lifetime that defendant had no title to the Minnesota Point lots, and further found that plaintiff did not have notice thereof until 1890, and directed judgment that the mortgage and its record and all proceedings under it were null and void, and that plaintiff is the owner of the property described in it. Defendant moved for a new trial, and, being denied, appealed.

*Roger S. Powell,* for appellant.

This is an action to set aside a mortgage alleged to have been fraudulent, in that $200 of the consideration was for a quitclaim deed of ten lots on Minnesota Point, for which defendant held only a tax title, which title was invalid, and that he knew it but falsely represented the title to be good, and that plaintiff and her husband relied thereon. The defense was a general denial and a plea of the statute of limitations.

Questions four and five submitted to the jury relate both to the goodness of the title and the value of the title. In so far as they relate to the value of the title they are meaningless. Titles to real property are good or bad, valid or invalid, perfect or imperfect; and to speak of a title's having value is an absurdity. Title is the foundation of ownership; it is the tie by which that which is of value is held. Under the circumstances of the case, defendant's statements were rather expressions of opinion as to the legal effect of his tax deeds than positive statements of fact. There were no relations of confidence between the parties. There is no evidence that defendant then knew or believed that his tax deeds were void. It may be also true that the parties did not stand upon an equal footing in point of intelligence and business experience; but this of itself is no

defense, as long as plaintiff's husband possessed the legal capacity to make contracts. Although the decision in the trial court may, in a popular sense, be an equitable decision, yet it cannot be sustained without a violation of clear legal principles. *O'Mulcahy* v. *Florer*, 27 Minn. 449; *Jaggar* v. *Winslow*, 30 Minn. 263.

There is not sufficient evidence to sustain the answer of the jury to the fourth issue submitted to them. The only testimony to sustain it was that of the plaintiff, and it is contradicted by defendant. The presumption in favor of written instruments is against it. This mortgage had stood unimpeached for seventeen years. A contracting party who has knowingly executed a written instrument intended to embody and evidence the agreement should not be allowed to avoid the legal effect of the instrument on the ground that its execution was procured by fraud, unless the proof be clear and strong. *McCall* v. *Bushnell*, 41 Minn. 37; *Parlin* v. *Small*, 68 Me. 289; *Cannon* v. *Jackson*, 40 Ark. 417; *Lavassar* v. *Washburne*, 50 Wis. 200; *McShane* v. *Hazlehurst*, 50 Md. 107; *Atlantic Delaine Co.* v. *James*, 94 U. S. 207.

The evidence shows that Webster M. Carlton had lived at the head of the Lakes all his life, had been buying and selling property for years, and plaintiff's evidence shows her to be a woman of intelligence. Both were in full possession of their faculties, and he was postmaster, fulfilling the duties of that station, a position which requires influence to secure and intelligence to perform its duties. Fraud and coercion are not perpetrated under such circumstances; the universal experience of mankind disproves it.

The Wheeler mortgage was in evidence. It became due February 20, 1874, subsequent to the making of the Hulett mortgage, and there would then be due on it the sum of $224, principal and interest, and no more. The taxes were but $58.59, leaving of the $475 admitted in the complaint to have been loaned the sum of $192.41 unaccounted for; and yet the court finds that $475 was due on the mortgage and for unpaid taxes. Mr. Carlton, it seems, had been sick, but the fair inference from Dr. Smith's testimony is that he was then much improved. He certainly was not confined to his bed.

There are no circumstances to corroborate plaintiff's version, while there are a host of circumstances to render it improbable. The verdict is in conflict with the weight of the evidence throughout.

As the plaintiff has not offered to reconvey the tax-title interest in the Minnesota Point lots, it may be, for aught that appears in the case, that she has parted with her interest in the lots, and possibly realized therefrom all that her husband gave for them. The fact that the tax deed is void on its face is no answer to this argument. *Dillman* v. *Nadlehoffer,* 119 Ill. 567.

The rule as to the statute of limitations of actions appears to be that the statute begins to run, not from the time when knowledge of the fraud was actually obtained, but from the time when, under the circumstances, knowledge ought by reasonable diligence to have been obtained. *Vane* v. *Vane,* L. R. 8 Ch. 383; *Chetham* v. *Hoare,* L. R. 9 Eq. 571.

Mere dullness of perception will not, it seems, be taken into account to prevent the bar of the statute. *Manby* v. *Bewicke,* 3 Kay & J. 342; *Bridgman* v. *Gill,* 24 Beav. 302; *Smith* v. *Acton,* 26 Beav. 210; *Cox.* v. *Dolman,* 2 De Gex, M. & G. 592; *Oldham* v. *Oldham,* 5 Jones, Eq. 89; *Franklin* v. *Ridenhour,* Id. 420; Story, Eq. Jur. § 1521a, note.

It is not claimed that the defendant ever did anything to hide the alleged fraud. The county records were at Duluth, and there were lawyers there to advise on the subject of titles. The defendant is weighted with age and his memory at fault as to details, but the plaintiff's is suspiciously good and growing better, as her testimony shows. In the mean time the property has greatly risen in value. There is no doctrine of equity better established than that the courts, for the peace of society, ought to discourage antiquated demands, by refusing to interfere where there has been gross laches in prosecuting rights, or long and unreasonable acquiescence in the assertion of adverse rights. 2 Story, Eq. Jur. § 1520; *Briggs* v. *Smith,* 5 R. I. 213; *Tash* v. *Adams,* 10 Cush. 252; *Peabody* v. *Flint,* 6 Allen, 52.

The law of laches, like the principle of the limitation of actions, was dictated by experience, and is founded in a salutary policy. The lapse of time carries with it the memory and life of witnesses, the

muniments of evidence, and other means of proof. The rule which gives it the effect prescribed is necessary to the peace, repose, and welfare of society. A departure from it would open an inlet to the evils intended to be excluded. *Brown* v. *County of Buena Vista*, 95 U. S. 157; *Sullivan* v. *Portland & K. R. Co.*, 94 U. S. 806; *Boston & M. R. Co.* v. *Bartlett*, 10 Gray, 384; *Holt* v. *Rogers*, 8 Pet. 420; *Godden* v. *Kimmell*, 99 U. S. 201; *Jenkins* v. *Pye*, 12 Pet. 241; *Beckford* v. *Wade*, 17 Ves. 96; *Humbert* v. *Rector, etc., of Trinity Church*, 7 Paige, 195; *Piatt* v. *Vattier*, 9 Pet. 405; *Marsh* v. *Whitmore*, 21 Wall. 178.

One who alleges fraud in a sale of either real or personal property to himself may either retain the property, and sue at law for damages for the fraud, or he may rescind the contract, and tender back the property, and have relief at law or in equity as to what he has paid or agreed to pay therefor; but he is not entitled to judgment that the contract is valid in part and void in part, canceling his obligations and permitting him to hold the property. *Grant* v. *Law*, 29 Wis. 99; *Van Trott* v. *Wiese*, 36 Wis. 439.

*Douglas & Davis* and *J. W. Bull*, for respondent.

The facts are fully found by the court, and also by a jury, and it is not contended that such findings are not supported by evidence. Where there is a conflict in the evidence, and the questions have been passed upon by the court and jury, they will not be disturbed here.

The facts show not only a confidential relationship, but an actual agency of Hulett in doing business for the Carltons. It also shows that, while Hulett was attending to business for them, he bought in the mortgage on the homestead at a discount of $58, and kept out of the proceeds of the loan the full face, making a profit on the side of $58. The mortgage was for $200, and interest, $24, and was assigned to Hulett January 27, 1874, for $165.

Defendant was county treasurer in 1874, and prior years. The evidence shows that he was a dealer in tax titles, and in a position to know the decisions of the courts in regard to such matters. The class of tax deeds held by the defendant was declared void in *Greve* v. *Coffin*, 14 Minn. 345, (Gil. 263,) nearly five years prior to this

transaction. An action for deceit lies against one who makes a false representation of a material fact susceptible of knowledge, knowing it to be false, or as of his own knowledge, when he does not know whether it is false or true. *Busterud* v. *Farrington*, 36 Minn. 320; *Reynolds* v. *Franklin*, 39 Minn. 24; *Erickson* v. *Bennet*, Id. 326; *Martin* v. *Hill*, 41 Minn. 338; *Bullitt* v. *Farrar*, 42 Minn. 8.

The statute gives six years after the discovery of the facts constituting the fraud in which to bring the action. The fact constituting the fraud was that the title to the lots was void, and not worth $200. On this issue the plaintiff's evidence that she did not discover that fact until 1890 is uncontradicted, and, under the evidence, is literally true. 2 Story. Eq. Jur. § 1522; *McIntosh* v. *Saunders*, 68 Ill. 128; *Berkey* v. *Judd*, 22 Minn. 287.

COLLINS, J. Counsel for appellant has argued quite a number of assignments of error, but aside from one, which is sustained, in so far as may be requisite in order for this court to direct a modification of the conclusion of law of the court below, they really need no special consideration. This one is the assignment which questions the principal finding of fact, as unsupported by the evidence. This finding was based upon the answers returned by a jury to certain specific questions of fact, which answers were, in effect, that when conveying the ten (10) lots on Minnesota Point to Mrs. Carlton, the defendant falsely and fraudulently stated and represented to her and to her husband, since deceased, that he had good title to all of said lots, which title was worth the sum of $200; that both plaintiff and her said husband believed and relied upon the statements and representations, and were thereby induced to and did accept from defendant his quitclaim deed to the lots, in lieu of $200 in money, when executing and delivering the mortgage in question upon certain real estate, including their homestead. From other findings, which we regard as sustained by the testimony, it appears that plaintiff and her husband were residing upon the property in question in the month of February, 1874. Mr. Carlton was sick, and had been disabled for about one year, most of the time confined to his house and bed. The family, a husband, wife, and a small child,

was in straitened circumstances, had great difficulty in obtaining the necessaries of life, and plaintiff was obliged to nurse and care for her husband both day and night. She was in great distress of mind and body, and pregnant, giving birth to a child in the spring of that year. There were an unpaid and past-due mortgage and unpaid taxes resting upon the land, amounting in all to about $475. The defendant was the county treasurer, an old acquaintance, a frequent guest at their home, with whom plaintiff and her husband freely consulted concerning their business affairs, and in whom they seemed to have had implicit confidence. Just previous to February 14, 1874, Mr. Carlton, his residence being fifteen miles from the county seat, requested defendant to assist him in obtaining a loan of money sufficient in amount to pay said past-due mortgage and the unpaid taxes, the loan to be secured by a mortgage upon the same land, including the homestead. On February 14, 1874, defendant went to the residence of the Carltons, taking with him a notary public and the mortgage in question. He informed them that he had concluded to loan the money himself, but that it was his custom to require any person obtaining a loan to take some lots from him as part of the consideration of the mortgage to be given as security. He thereupon produced a quitclaim deed of the ten lots before mentioned, and made it a condition that they accept said deed in lieu of the sum of $200. The balance of the amount represented by the note, to secure which the mortgage was to be given, $475, was to be used by defendant in behalf of the Carltons in paying off the mortgage incumbrance then resting on the premises, the taxes, and contemplated insurance. As a matter of fact, unknown to the Carltons, the defendant had already procured an assignment of the unpaid mortgage at a discount of $58. He reserved the full amount due thereon out of the $475, using the balance, as agreed upon, for taxes and insurance upon the buildings.

It stands undisputed, then, that the sole consideration for the note and mortgage executed by the Carltons was the quitclaim deed, consideration fixed at $200, and $475 in cash, and out of this defendant made a profit of $58, as before stated. There was testimony sufficient to sustain plaintiff's contention, although the same was em-

phatically contradicted by defendant, that her husband, at first, refused to take any lots from defendant, as he had too much of that sort of property then on hand, and that he yielded to the imposed conditions only when he found that defendant persisted in them, and would not make a loan otherwise; and while the defendant denies this, as before stated, he admitted, upon cross-examination, that at the time of this transaction the Carltons had a large number of town lots, and, as he expressed it, were "land poor."

The defendant's mortgage was regularly foreclosed by advertisement in May, 1877, and at the sale he purchased the tracts of land. There was no redemption. Mr. Carlton died testate in August, 1879. His will, wherein plaintiff was duly named sole devisee, was duly probated and allowed in this state, April 21, 1890. Mrs. Carlton removed from the state in 1880, remaining absent about ten years. As a matter of fact, defendant had no title whatsoever to the lots conveyed by his quitclaim deed. His pretended tax title thereto was utterly worthless, being of that class of tax titles or deeds declared void in *Greve* v. *Coffin*, 14 Minn. 345, (Gil. 263,) about five years prior to this transaction. Of this failure of title to the lots the court found that plaintiff had no notice until 1890, and that there was no testimony tending to show that her deceased husband was advised of it in his lifetime.

Recurring, now, to the principal question, it must appear that if defendant asserted that he had a good title to these lots, and that the quitclaim deed conveyed a good title thereto, he misrepresented a material fact. The remarks of counsel in his brief as to the impropriety of submitting questions to the jury numbered four, (4,) five, (5,) and six, (6,) which he says relate both to the goodness of title and the value of title, and which he asserts will not bear the test of logical analysis, may be quite correct; but by one of these questions the jurors were required, in everyday sort of language, plain enough, we think, to answer whether the defendant, at the time he delivered his deed, represented that such deed conveyed a good title; and, further, perhaps not quite so clear an inquiry, whether he represented that such title was worth the sum of $200. The jury answered this question in the affirmative. Its submission was warranted by the issues

made by the pleadings, and particularly by the allegation in the complaint, controverted by the answer, that defendant stated and represented his title to said lots to be perfect, and that their market value, with such title as he should convey by said deed, was $20 each in cash. With the assertion that he had a perfect title, the further statement as to their market value was not qualified. It was a positive assertion as to their real value in the market, with an unquestionable title. If the title was not good, a material fact was misrepresented by defendant, and it is not important whether he misrepresented as to value, although the court found the value with a perfect title to be but five dollars each, when deeded, and that defendant's misrepresentation as to value was material. The misrepresentation on these points was one of fact, not of law, as defendant's counsel argues.

This brings us to a consideration of the further finding that these misrepresentations were fraudulently made. Was defendant guilty of an intentional fraud, and, if so, were the Carltons justified in believing and relying upon the statements and representations? On examination of the evidence, we are driven to the conclusion that defendant must have known he had no title to these lots when he conveyed them to Mrs. Carlton. Defendant was then, as the evidence discloses, the county treasurer, a prominent man in his locality, dealing largely in real property and tax titles. This court had declared this class of tax deeds void and worthless five years previously. We think it can fairly be inferred that defendant knew of the invalidity of these titles or deeds, as adjudged by the courts. In fact, he made no claim, when on the witness stand, that he believed his title to these lots of any value. He seems to have justified a sale to the Carltons because other prominent men were dealing in such titles, and he also states that they, (the Carltons,) in a number of conversations he had with them in regard to the value of tax titles, expressed an opinion that "a tax title was as good or better on Minnesota Point than the town council title." What his opinion was, does not appear in words; but we observe from the testimony that at this time he was engaged in procuring the original, or town council, title to lots on which he held tax titles, as the opportunities

were presented. But, according to the record, the assertion was an unqualified one, amounting to an affirmation as of his own knowledge. If false representations are made as of one's own knowledge, or unqualifiedly, being such as might and do mislead, they are unjustifiable and fraudulent. *Merriam* v. *Pine City Lumber Co.*, 23 Minn. 314; *Bullitt* v. *Farrar*, 42 Minn. 8, (43 N. W. Rep. 566.)

We are also of the opinion that the testimony, a repetition thereof not being essential because the substance has already been stated, warranted the conclusion of the jury, and the finding, that the Carltons were justified in believing and relying on defendant's statements and representations as to his title being perfect. Their situation and helpless condition at the time, physically and otherwise, their relations with defendant, and his positive affirmation as to the character of his title, relieve them from the charge of negligence, and were sufficient to justify their failure to examine the records or the tax-deeds. See, on this, *Kiefer* v. *Rogers*, 19 Minn. 32, (Gil. 14;) *Porter* v. *Fletcher*, 25 Minn. 493; *Griffin* v. *Farrier*, 32 Minn. 474, (21 N. W. Rep. 553;) *Reynolds* v. *Franklin*, 39 Minn. 34, (38 N. W. Rep. 636;) *Erickson* v. *Bennet*, 39 Minn. 326, (40 N. W. Rep. 157.)

There is nothing whatever to appellant's claim that the court below erred when admitting Mrs. Carlton's testimony as to the conversation had between defendant, herself, and her husband in the life time of the latter, all three persons being present and taking part, or the contention that it was error to admit in evidence the duly-authenticated copy of Mr. Carlton's last will and testament, and of the probate thereof.

We have indicated, however, that the conclusion of law of the trial court must be modified. It is argued by appellant that, before this action could be brought, it was essential that plaintiff should tender to defendant a reconveyance of the lots; and further, that the fact of such tender should have been averred in the complaint; to which respondent's counsel reply that, as appellant's title to the lots was wholly worthless, it was not necessary to offer to return or reconvey, in order to repudiate and rescind the contract.

Authorities in support of respondent's position on this point are abundant, but are foreign to the case, because she has not attempted to abrogate and rescind the mortgage contract by her own act, but by judicial proceedings instead. In such cases, where one seeks the aid of a court to set aside and rescind a contract, it is not essential that he should have previously attempted a rescission, or should have made any tender to the other party, except when such tender is necessary to put the other party in default. By submitting her cause to the court, the plaintiff expressed a willingness to perform such conditions as it may regard necessary to impose as proper terms on which relief shall be granted. What such a plaintiff ought to do, and what he must do, to reinstate the other party *in statu quo*, as a condition for repudiation and rescission, is for the court, which always possesses the necessary power to determine the question. *Knappen* v. *Freeman*, 47 Minn. 491, (50 N. W. Rep. 533.) See, also, *Kiefer* v. *Rogers*, 19 Minn. 32, (Gil. 14;) *Coolbaugh* v. *Roemer*, 32 Minn. 445,. (21 N. W. Rep. 472.)

A defrauded party, appealing to a court of equity for relief, must be compelled to exonerate himself from all imputation of ratifying, in any degree, the fraud of which he complains. He cannot be permitted to affirm as to a part of the transaction and repudiate as to the residue. It must be rescinded *in toto*, if at all, except in very special cases, where it is evident no injustice will be done. See *Bradley* v. *Bosley*, 1 Barb. Ch. 125. The maxim to be ordinarily applied suggests itself, "he who seeks equity must do equity," and a court ought not and will not set aside and rescind a contract without requiring the party who makes the application to restore the one against whom relief is sought, as far as possible, to that which shall be a just situation as respects the rights he held antecedently to the transaction. Citations on this proposition seem superfluous, but see. *Grymes* v. *Sanders*, 93 U. S. 55, and *Savery* v. *King*, 5 H. L. Cas. 627,. It is recognized as the law in *Hegenmyer* v. *Marks*, 37 Minn. 6, (32, N. W. Rep. 785,) and *Knappen* v. *Freeman*, *supra*.

To allow the plaintiff to retain the money or the benefit of the sum which was paid out and advanced for the mortgagors by defendant,.

and which became a part of the mortgage debt, and at the same time to cancel and annul the mortgage, with the foreclosure of the same, would be an exceedingly unjust proceeding. It would be at once a ratification and a repudiation, and these cannot be allowed to concur in the same action.

All of the proceedings had below have been certified up. We find no allusion therein to the matter of a reconveyance of the town lots, or to the more important subject, probably, of a return or repayment of the money which was advanced and paid out by the mortgagee defendant at the request of the mortgagors. By the single conclusion of law appended to the findings of fact, judgment was ordered in plaintiff's favor, wiping out of existence, without terms or conditions, defendant's mortgage security and the foreclosure proceedings, with all record thereof. The entry of so sweeping a judgment would be most unfair and inequitable. It cannot be permitted, but in this connection we ought to say that it is quite evident that the attention of the trial court was not drawn to this branch of the case by the defendant's counsel; and, although covered by one or more assignments of error, he has wholly failed, in brief or in his oral argument, to refer, when presenting this appeal, to the injustice of a decree which would set aside and cancel the mortgage, and fail to require a return or repayment of the mortgagee's money to secure which it was given. He has in his brief referred, somewhat incidentally, to the mortgagee's right to a reconveyance of the lots, as before stated.

While it is extremely probable that such a reconveyance will confer nothing of value upon defendant, there may be some collateral rights or interests which will be protected or made available thereby; and as the conclusion of law must, in any event, be modified or amended, so as to impose equitable terms upon the plaintiff in respect to the sum of money which constituted a part of the mortgage debt, a reconveyance should also be directed. It is therefore ordered that the case be remanded to the court below for a modification or amendment of its conclusion of law in the manner intimated. Judgment for the plaintiff will be directed only upon condition that she

v.48m.—21

convey, or offer to convey, to defendant, and by quitclaim deed, the lots in question, and that she pay, or cause to be paid, to him, the sum of $475, with interest at seven per cent. from and since February 14, 1874.

The court below will also, in its conclusion of law, prescribe a reasonable period of time within which the deed must be tendered and said money paid, or, in case of a failure on plaintiff's part, judgment may be entered against her, and in defendant's favor.

An application for a reargument was denied April 25, 1892.

(Opinion published 51 N. W. Rep. 1053.)