GEORGE T. BELL, Appellant, *v.* JOSHUA SHRIEVE, Appellee.

### APPEAL FROM MARSHALL.

Where a mortgagee, under a chattel mortgage, takes possession of the mortgaged property, under default in the payment of the mortgage, but by mutual consent between the mortgagee and mortgagor, the day of payment or sale is delayed, with the privilege to the mortgagor of using the property for a certain purpose, at a specified time: —

*Held*, that upon demand of the property by the mortgagor, not for the temporary use, but in right of his own general property, the mortgagee might well refuse to deliver it up on such a claim and demand.

*Held*, also, that under the same circumstances, the mortgagee might refuse to deliver up property which had been substituted by the mortgagor for the mortgaged property.

THIS was a suit in trover originally brought before a justice of the peace in Marshall county, by the appellee against the appellant, and taken, by appeal, to the circuit court of Marshall county, LELAND, Judge, when it was tried at the January term, 1853, and judgment rendered for the appellee, the plaintiff below. The defendant below appealed.

The facts of the case appear in the opinion of the court.

T. S. DICKEY, for appellant.

GLOVER & COOK, for appellee.

SCATES, J. Upon the trial of an action of trover on appeal, the jury rendered a verdict for Shrieve, the plaintiff below, upon the following facts and instructions; the giving of one of which for Shrieve, and the refusal of a new trial, are the errors relied on here. On the 31st December, 1850, Shrieve executed his note to Bell for $206.50, payable 1st November, 1851, with interest. At the same time, to secure the payment, he executed a mortgage upon a wagon, harness, and two horses, one a bay, the other a sorrel, called Bill. The defeasance provided, that the possession should remain with Shrieve until default, when Bell might take possession, and sell upon ten days' notice. There is no evidence of any payment.

In the spring of 1850, Shrieve invited Perry to Bell's stable, to sell him a bay horse in Bell's possession, which he called Shrieve's, and encouraged him to buy, which Perry agreed to do at $65. Upon Shrieve offering to take the horse away, Bell refused to let him go, and in the dispute between them, it was

admitted that Bell had taken possession of the Bill horse named in the mortgage, the fall of 1851, to keep through the winter and spring work, and he becoming lame, this bay horse had been put in his place by Shrieve, and the Bill horse taken away; that he was to have the Bill horse when he commenced break- ing prairie in the spring, which had been commenced at this time, though sooner than usual for breaking prairie. Bell claimed that he was to keep the horse until he was done plough- ing, and that he could have him on the 10th May, and not sooner. In a conversation, in June, afterwards, Shrieve said he had been advised he could sue Bell, and make him keep the horse and pay for him, and he intended to do so; but admitted that the horse was in the place of the Bill horse.

At the instance of Shrieve, the court instructed the jury, if they believe from the evidence that the horse in controversy was owned by Shrieve in April last, and that he was entitled to the possession of said horse at that time, and that the plaintiff made a demand upon Bell for the horse, when the plaintiff was entitled to the possession, and that defendant refused to give up the horse when demanded, they will find for the plaintiff.

This was objected to, and is assigned for error; but we are of opinion, was properly given.

The refusal to grant a new trial is also assigned for error; and in this, we are of opinion, the court erred.

In relation to the instruction, we need only remark, that, in trover, the parties may mutually try their general title to the ownership or possession of the property, or their title to the spe- cial ownership or possession.

This instruction seems to have been framed with the intention of so laying down the law in relation to the plaintiff's right in this case, and, we think, presents a correct view of the law.

In relation to the new trial, we are of opinion, that the ver- dict was clearly against the law and evidence, and the rights of Bell, who had a special right of property and possession of the Bill horse under the mortgage, for the purpose of selling for the payment of his debt, if required by the defendant, or upon giv- ing notice without that requisition. The horse in question being exchanged for the Bill horse, and put in his place, is held under the same right. The day of payment or sale seems to have been delayed, by mutual consent, until spring, or longer, and apparently with the intention and understanding of allowing Shrieve the further use of the horse when he commenced break- ing prairie. But at this time, instead of requesting the tem- porary use of the horse, subject to Bell's lien and special prop- erty, he demands him in right of his own general property. Bell

might well refuse to part with him on such a claim and demand, as inconsistent with his right, and by which, had he complied with it, he might have even lost it. He might sell the horse with Bell's consent. But if he could sell him without, it could only be upon obtaining for him his fair value, and offering the proceeds to Bell, consistent with his right, under the mortgage, to that value, under a sale.

As to holding this horse in place of the Bill horse, this case is distinguishable from Rhines *v.* Phelps et al., 3 Gil. R. 463, in two respects. There, the contest was between mortgagee and creditors of mortgagor; here, between mortgagor and mortgagee. There, mortgagee had not taken possession of the mortgaged property, nor of that substituted; in this case, he had possession of both.

Judgment reversed, and cause remanded for new trial.

*Judgment reversed.*