GEORGE PERSON and another *vs.* WILLIAM WILSON.

## July 18, 1878.

Conversion of Property to Partnership Uses—Evidence.—Proof that plaintiffs, with their own means, bought a quantity of lumber to be used in a joint undertaking in which they were engaged with one C., as partners, and delivered it on the ground belonging to all the members of the firm, where the enterprise was being prosecuted, and that C., who had the personal charge and supervision of the matter, thereupon took possession of the lumber, and with the knowledge and silent acquiescence of the plaintiffs, proceeded to apply it to the partnership uses as was needed, is sufficient evidence to establish the fact of a conversion into partnership property of the whole lumber so bought and delivered, with the implied agreement of all the partners.

Conversion of common property by one of the owners.—A sale and delivery of personal property, owned jointly or in common, by one of several cotenants, as his own exclusively, will sustain an action for a conversion by the other cotenants for their share.

Same—Demand and Refusal.—When a demand is made of the entire property, owned in common, of a tenant in the actual possession thereof, by the other cotenants, on the ground that the property belongs to them exclusively, a refusal to comply with such demand, though accompanied with a like claim of exclusive ownership, is no evidence of a conversion for which an action can be maintained.

The plaintiffs, George Person and Stephen S. Smith, brought this action in the district court for Goodhue county, alleging in the complaint that on May 27, 1876, they were and still are the owners and entitled to the immediate possession of a quantity of lumber of different kinds, quality and dimensions, of the value of $749.83; that on that day the defendant being in possession thereof, at, etc., wrongfully converted the same to his own use; that on or about May 27, 1876, the plaintiffs demanded of the defendant possession of the property, which was and still is refused. Judgment is demanded for $749.83, and interest from May 27, 1876.

The defendant in his answer denies any title or right of possession in the plaintiffs, denies that he at any time unlawfully converted the property, or any part of it to his own use, "and denies that by reason of the premises, or otherwise, the plaintiffs have been damaged in the sum alleged in the complaint, or in any sum." He also denies any demand or refusal, and alleges title in himself by purchase of the property, on January 26, 1876. The answer is silent as to the value of the property.

At the trial before *Crosby, J.*, the defendant introduced evidence tending to prove a sale and delivery of the property to him by one Converse, on January 26, 1876. The title shown by plaintiffs, and the exceptions taken, are stated in the opinion. The jury found for the plaintiffs, a new trial was refused, and the defendant appealed.

*W. Kinney* and *Jones & Gove*, for appellant.

*J. W. Steel* and *F. M. Wilson*, for respondents.

CORNELL, J.   It is conceded that the plaintiffs and one Converse, having, on May 21, 1875, purchased and acquired a

certain tract of land containing a mill-site and water-privilege, on the condition, as stated in the deed transferring to them the title, "that they should complete and have in running order thereon, on or before the first day of June, 1876, a flour or grist mill, to be known and run as a custom mill by themselves, or by their heirs or assigns, with at least two run or sets of burrs," thereupon formed a copartnership for the purpose of building the mill in pursuance of the conditions of such purchase, and entered upon the undertaking, as copartners, by commencing the construction of the dam and the erection of the mill on the proposed site. The evidence also tended to prove the following additional facts: The joint enterprise was prosecuted till some time in August, 1875, when the work was suspended or abandoned. During this time, Converse had the personal supervision and active management and control of the business when the mill was being built, remaining constantly on the ground, while the plaintiffs lived some miles away, and were engaged in other pursuits, visiting occasionally the scene of operations. A dwelling-house was built upon the tract, into which Converse moved and lived. The dam was partially constructed, the foundation for the mill was partly put in, and the mill itself was mostly framed, before the suspension of the work. After the inception of the enterprise, the plaintiffs, as they state in their own testimony, which is uncontradicted, "bought, for the purpose of putting up the mill," a quantity of lumber, described by them as "a lot of lumber, consisting of plank, timber, boards, shingles, studding and flooring," of such different kinds as would naturally be required for such a purpose, and enough to build a mill 30 by 36, such as it appears was contemplated. They paid for it out of their own funds, but delivered it on the proposed site for the purposes for which it was bought. It was billed in the name of the partnership, and receipted for accordingly. Though received and paid by the plaintiffs personally, it does not appear that they then or ever objected to the manner in which the bills were made out.

On its delivery upon the ground belonging to the members of the firm, Converse took actual possession and charge of it, built the house out of it, put portions of it into the dam, and other portions into the foundation for the mill, and also framed out of it the entire mill ready for erection, excepting the rafters. While this was being done, the plaintiffs visited the place from time to time, and saw the condition of things, but made no objection, so far as the evidence shows, to the use that was being made of the lumber, nor does it appear that there was ever any special agreement or understanding between them and Converse in reference to this lumber, other than what grew out of their partnership or joint relations in the prosecution of the common undertaking in which they were engaged. The acts of Converse, therefore, in taking possession of the lumber and in applying it to the uses he did, must be held presumably to have been the acts of the firm.

The present action concerns that portion of this lumber which was left at the time of the suspension of the work, and which had not been actually used in the construction of the house, or put in place in the dam and foundation for the mill structure. The claim of plaintiffs includes not only the unused portions of the lumber, but the entire framework of the mill not already erected or in place, though partially or wholly fitted therefor. The claim is rested upon the proposition that such portion so left never became partnership property, but belonged to the plaintiffs alone. In the submission of the case to the jury, the court stated, without objection from either side, that "it was not controverted that Person, Smith and Converse were engaged in the joint undertaking of erecting a mill, and that they were so engaged as partners." Its charge, however, contains a refusal and instruction in the following language, which was duly excepted to by the defendant, and which is here assigned as error, viz.: "I am requested, gentlemen of the jury, by the defendant, to instruct you that the property having been purchased and delivered upon the ground, to be used in the prosecution of a common

enterprise by Person, Smith and Converse, and portions of it having been prepared for the purposes of the firm, the same became partnership property of the firm. I decline so to instruct you that, under those circumstances, this property became the partnership property of the firm; * * * the mere fact of its having been purchased by Smith and Person, and placed upon the ground, ultimately to be put into a mill, and of erecting it, would not necessarily make it mill property. If there was a partnership existing between the parties for the purpose of building a mill, and the lumber put into the building, then it became part of the partnership property; and it is a question for you to determine, from the instructions I have given you, the question of fact, whether this property became partnership property or not." The jury must have inferred, as they very naturally might, from this refusal and instruction, that none of the lumber bought by the plaintiffs became partnership property, unless it was actually incorporated into the proposed structures which the firm was engaged in building. That they regarded this as the decisive test in determining the question whether it was firm property or not, is obvious from their verdict, which evidently includes compensation for all the lumber which was not so actually incorporated and put in place in such structures, whether it was partially prepared and fitted for such uses or not. This was clearly error. Lumber fitted and prepared for a partnership use, at the expense of the firm, by being framed for the mill, became as much the property of the firm as though it had been put into the building itself. Proof that the lumber was bought and delivered by plaintiffs upon the ground belonging to the members of the firm, for the purpose of being there used in their joint undertaking as partners, and that Converse, who had the personal charge and supervision of the enterprise, thereupon took possession of it, and, with the knowledge and silent acquiescence of plaintiffs, proceeded to use it as needed for any of the partnership purposes, whether in framing the mill or otherwise, would be

v.25M—13

sufficient alone, if uncontradicted, to establish the fact of a conversion into partnership property of the entire lumber, with the implied agreement and assent of all the partners, even though it was wholly bought with the means of the plaintiffs. The exceptions to the portion of the charge and the refusal under consideration were well taken, and for this alone a new trial must be granted.

In view of a new trial, it is well, perhaps, to consider briefly the instructions which were given in relation to the liability of the defendant, in case the property in controversy was found to belong originally to plaintiffs and Converse, not as partners, but as tenants in common, and that the latter, holding the entire and actual possession, delivered it to the defendant under a bill of sale, assuming to transfer the title to the whole property as his own, instead of his undivided interest therein. Upon this state of facts, the sale from Converse to the defendant only operated to pass the title to the interest which he owned, and not the shares belonging to the plaintiffs. *Mersereau* v. *Norton*, 15 John. 180. By the transaction the defendant acquired title to the undivided interest belonging to Converse, together with exclusive actual possession of the entire property thus owned in common. His position, then, was that of a cotenant with plaintiffs, owning an undivided interest, and holding actual possession of the whole common property. As such tenant, he had no right to dispose of the interests of his cotenants, by a sale and delivery of the entire property as his own, for that would be an act in such total violation of the proprietary rights of his cotenants as would sever the cotenancy, and be deemed, in law, equivalent in its effects to a loss or destruction of the property itself. *Wilson* v. *Reed*, 3 John. 177; *White* v. *Osborn*, 21 Wend. 75; *Weld* v. *Oliver*, 21 Pick. 559.

There was some evidence tending to show a sale in this case, and enough, perhaps, to justify the court in declining to withhold the question of a conversion from the jury. But the ruling contained in the instructions which were given, to

the effect "that the acts of the defendant," if so found, "in claiming to own the entire property, refusing to deliver it to the plaintiffs when they demanded it, at the same time assert ing ownership over it, and an entire ownership in the property," as testified to by the plaintiffs, were sufficient to justify the jury in finding a conversion, was clearly erroneous. The only demand proved, or attempted to be, was for the whole property, as the sole and exclusive property of the plaintiffs. In making it, they recognized no interest whatever in the defendant, as cotenant or otherwise. His refusal to comply with such a demand, though put upon the ground of an exclusive ownership in himself, cannot be regarded as a repudiation of any of their rights as cotenants to the joint use and occupancy of the property owned in common, for no such rights were claimed or asserted. The demand and refusal, therefore, accompanied though the latter may have been with a claim of sole ownership in the defendant, furnished no evidence whatever of a conversion, and the jury should have been so instructed. *Swartwout* v. *Evans*, 37 Ill. 442; *Bell* v. *Shrieve*, 14 Ill. 462; *Gilbert* v. *Dickerson*, 7 Wend. 449.

Upon the pleadings, the value of the property alleged to have been converted stands admitted, and hence it is unnecessary to inquire into the correctness of the rulings upon the admissibility of evidence upon that question. Neither is it deemed important to consider any of the other points made on the argument. The order appealed from is reversed, and a new trial granted.