## WOOD v. STEINAU.

1. A tenant in common of personal property, to the actual possession of which he is entitled, may maintain an action for conversion against his co-tenant who denies his interest, and by whose act the plaintiff has been deprived of the possibility of any enjoyment of the property.

2. An instruction which assumed a matter in dispute, and to which the evidence is conflicting, to be as claimed by one party, is misleading and prejudicial.

(Opinion filed July 18, 1896.)

Appeal from circuit court, Union county.    Hon. E. G. SMITH, Judge.

Action in conversion.    Plaintiff had judgment, and defendant appeals.    Reversed.

The facts are stated in the opinion.

*A. D. Kellar* and *R. B. Tripp*, for appellant.

To maintain trover there must be a concurrence both of the right of property, general or special, and of the actual possession, or the right to the immediate possession.    26 Am. & Eng. Encyc. of Law, 744; Lloyd v. Powers, 4 Dak. 62; S. C. 22 N. W. 462; Swenson v. Kleinschmidt, 26 Pac. 198; Tuthill v. Wheeler, 6 Barb. 363.    In order to maintain this action, plaintiff's interest and right must be exclusive.    Buckley v. Carlisle, 2 Cal. 420; Mason v. Tipton, 4 Id. 276; Morganstein v. Thrift, 6 Pac. 689; Kuhn v. Newman, 49 Ia. 424; Remington v. Allen, 109 Mass. 47; Kellogg v. Fox, 45 Vt. 348.    The pleading and instruction should correspond.    Chicago K. & W. Co. v. Bell, 41 Pac. 209.

*E. C. Ericson* and *French & Orvis*, for respondent.

One tenant in common may maintain trover against his co-tenant in common.    Bray v. Bray, 30 Mich. 480; Grove v. Wise 39 Mich. 161; Delaney v. Root, 99 Mass. 546; White v. Osborn, 21 Wend. 70.

FULLER, J.    Upon a claim of joint ownership and right of possession, plaintiff instituted this action to recover the value of

a certain stock of general merchandise alleged to have been wrongfully converted by the defendant to his own use. A jury trial resulted in a verdict against the defendant in plaintiff's favor for $1,132.99, and this appeal is by the defendant from a judgment accordingly entered, and from an order overruling a motion for a new trial. The cause of action stated by respondent in her complaint being fully established by the evidence introduced at the trial, facts not essential to an understanding and consideration of assignments of error challenging the correctness of the court's charge to the jury, and relating to certain rulings upon the admission and rejection of evidence, will be omitted. Pending proceeding to foreclose a mortgage upon certain land owned by respondent, the parties to this action entered into a contract, the validity of which is not questioned, pursuant to which appellant purchased the premises at foreclosure sale for $1,278.07, and upon the expiration of the period of redemption received a sheriff's deed therefor. According to the arrangement above mentioned, respondent, who agreed not to redeem from the foreclosure sale, was to have one year after the execution of a sheriff's deed within which to obtain from appellant a conveyance of the premises, upon payment of the amount bid and paid therefor, together with 10 per cent annual interest thereon. Afterwards, and before the year had expired, and apparently pursuant to a further agreement between the parties to this suit, the land in question was given, together with $400 of appellant's money, in exchange for the stock of merchandise in question, the value of which was estimated to be $3,200, in the city of Minneapolis, where, by the assistance of respondent's husband, acting, it is claimed, for both his wife and appellant, the bargain was negotiated and concluded. For the purposes of the trade the land was considered to be worth and taken at $2,800, which, with the cash payment of $400 made by appellant, constituted the entire consideration for the merchandise, upon the receipt of which, with a bill of sale made by the owner, appellant paid the money,

and executed and delivered his warranty deed. As shown by the undisputed testimony, it was agreed that the property thus obtained was to be shipped to Akron, Iowa, in the name of appellant, to be placed in a store, for the purpose of retail trade, with other goods, wares, and merchandise, known as the "Bishop stock," which was to be turned over to appellant, in the name of whom the business was to be carried on by respondent and her husband until appellant should receive from the proceeds of retail trade all the money due him from respondent, which at least includes the item of $400 and the amount paid for respondent's land at foreclosure sale, with interest at the rate agreed upon. Concerning the value of the stock of merchandise obtained at Minneapolis, and the aggregate amount of money which appellant was, under the agreement, entitled to receive from the sales at Akron, there is some conflict in the evidence, all of which was not, it is claimed, submitted to the jury under specific and proper instructions by the court. After the shipment to and arrival of the property at Akron, some misunderstanding arose between the parties with reference to the delivery to appellant of the Bishop stock, which was then in a building occupied apparently by the mother of respondent, in whose name the business was at the time being transacted. The evidence received under the complaint, though disputed in some particulars, is sufficient, if properly admitted, to establish a joint ownership of the property in controversy, and show a willingness and ability on the part of respondent to comply with her agreement by turning over to appellant the Bishop stock to be mingled with the goods owned jointly by appellant and respondent, with the understanding that the business be conducted by respondent and her husband, but in the name of appellant, until he had been fully reimbursed for the money put into the land exchanged for the Minneapolis stock, and the cash advanced in order to obtain the same, after which respondent would, under the agreement, be the sole owner of the entire stock, and entitled to carry on the

business in her own name. According to the agreement, as shown by the testimony offered in support of respondent's theory, her interest in the goods in dispute is ascertainable by deducting from $3,200, the estimated value thereof, the $400 advanced by appellant and the amount for which he purchased her land at foreclosure sale, together with 10 per cent interest thereon from the date of the purchase thereof. Appellant, however, offered evidence under his answer tending to show that the goods were worth not to exceed $1,500, and that, through the agency of respondent's husband, the business at Minneapolis was all transacted for himself and the mother of respondent, who refused to perform her part of the contract under which appellant was to receive, in the manner above indicated, from a sale of the goods, in addition to the cash already mentioned nearly $200, expended by him in the payment of insurance and taxes upon the land, the expense of making the trade, and certain freight charges which he had paid in order to ship the stock from Minneapolis to Akron. Respondent's right to the possession of the goods at any time is also in dispute. Evidently owing to a difference of opinion between the parties as to appellant's rights under the contract, he refused to allow the goods to be placed in the store at Akron, to be sold by respondent, as agreed upon, and, without her knowledge or consent, shipped the entire stock out of the state of Iowa to Elk Point, in this state, where he still retains exclusive possession thereof, and denies respondent's right thereto and refuses to perform his contract in any particular.

In the absence of reversible error, should it be found that one having an interest such as respondent claims, may under the code system, and circumstances like the present, maintain this action against a joint tenant, we think, from the evidence, viewed in the light of the law; that the jury were justified in finding that respondent was the owner of an interest in the property, worth $1,132.99, and, under the agreement, entitled to the actual possession of the entire stock for the purpose of sale at Akron, when appellant, in violation of his agreement made the

shipment to Elk Point, and converted the same to his own use. As previously intimated, there was evidence sufficient to go to the jury upon the theory of a joint ownership, and justify a conclusion that upon the arrival of the shipment at Akron respondent, being ably and ready and having offered to comply with her agreement, was entitled to the actual and immediate possession of the property; and, although it was agreed that the legal title should for the time being remain in appellant, he was in no manner authorized to remove the entire stock out of the state, and appropriate the same to his own use. That a tenant in common may maintain an action against a co-tenant to recover the value of a joint interest in personal property, to the actual possession of which he is entitled, at a time when his right of ownership and possession are denied and ignored in a manner which deprives him of the possibility of any enjoyment thereof or benefit therefrom, is supported by both reason and authority. Bray v. Bray, 30 Mich. 479; Person v. Wilson, 25 Minn. 189; Bridge Co. v. Newby, 1 Or. 173; Weld v. Oliver, 21 Pick. 559; Coursin's Appeal, 79 Pa. St. 220; Sullivan v. Lawler, 72 Ala. 74; Delany v. Root, 97 Am. Dec. 52: "If a tenant in common of chattels so appropriate them to his own use as to render any future enjoyment of them by his co-tenant impossible, the latter may maintain an action of tort in the nature of trover against him." Needham v. Hill, 127 Mass. 133.

Appellant testified in support of his answer to the effect that it was agreed that he should be the absolute owner of the Bishop stock and the merchandise in question, and entitled to the actual possession thereof, until sufficient had been sold to reimburse him for the money paid for the land, with interest thereon, the $400 advanced to Minneapolis parties, together with certain taxes and money disbursed in payment of expenses connected with the purchase and delivery of the Minneapolis stock at Akron, amounting in the aggregate to $1,978.54 and no claim is made that any part thereof has ever been paid

by respondent, or any one in her behalf. Upon respondent's theory, and with reference to the measure of damages, the court instructed the jury that: ''The plaintiff would be entitled to recover the difference between the just and reasonable value of that stock of goods and the amount due to the defendant upon this mortgage redemption, which is conceded to be $1,278.07, with interest from February 11, 1893, at 10 per cent up to the date when the goods were shipped away from Akron, together with $400, the amount advanced by this defendant. The difference between those two sums and the actual value of the Minneapolis stock would be the amount of the plaintiff's recovery." Under the evidence the jury would have been fully justified in finding that the value of the property alleged to have been converted did not exceed $1,500; that the amount due appellant was $1,978.54, and, in that event, conceding the contract to be in all other respects as claimed by respondent, appellant would be clearly entitled to a judgment. Appellant, who claimed to be the unqualified owner, and entitled to actual possession, nowhere conceded his interest to be less than $1,978.54, and, as the record then stood, any assumption upon the part of the court that there was in fact a difference between the actual value of the property, and the amount due appellant, to be realized from a sale thereof, was unwarranted, and likely to mislead the jury. Under no theory of the case was respondent entitled to recover more than nominal damages, unless the actual cash value of the property exceeded the amount of her indebtedness to appellant; and, as that was a material issue, concerning which the evidence was conflicting it was prejudicial error to instruct that an amount materially less than the sum claimed by appellant was conceded to be all that the jury would have a right to deduct for the benefit of appellant from the actual cash value of the property at the time of the alleged conversion. The language employed, when considered with other portions of the charge relating to the same subject, is equivalent to an instruction that appellant had

yielded a portion of his claim by admitting that respondent's evidence as to the amount of his interest should serve as a basis for computation, in case the jury should find for respondent, and notwithstanding his testimony to the contrary.

As the view we have taken of the foregoing instruction is decisive of the case, other assignments of error will not be noticed. The judgment is reversed, and a new trial is ordered.