## GRISSEL V. BANK OF WOONSOCKET.

1. In an action against a bank to recover a deposit, defendant answered that it had been applied on plaintiff's note, which it held.  Plaintiff claimed that he gave the note for the accommodation of his brother, who, on a certain day, paid it by giving another note, which defendant accepted in full payment.  Defendant claimed that the new note was taken as collateral security for plaintiff's note, and not in payment. Plaintiff's note remained in the bank, uncanceled, for 14 months after the new note had been given, and neither he nor his brother demanded possession of it.  Defendant offered to prove that during said 14 months it had frequent conversations with plaintiff relative to his note, and that he never denied his liability, but said he would pay it as soon as possible.  *Held* error to exclude such evidence, as it was proper to show the understanding of the parties as to the transaction by their conversations and acts.

2. In such case, giving an instruction that when parties are making a bargain they are all held to mean and intend just what the language used by them commonly imports, as ordinarily used in reference to the subject-matter of the contract, and not what either party may have secretly intended in his own mind, and a repeating of it as follows: "If his words, as commonly understood in relation to the subject-matter, import an agreement, then you must find an agreement from these words, and not what he secretly intended and meant,"—was error, as it tended to give the jury the impression that the court thought that the evidence of plaintiff's brother as to the transaction in making the new note was

correct, and that the bank, while giving him to understand that the new note canceled the old one, secretly intended to regard the note as unpaid.

3. In such case, it was error to refuse to instruct that if the jury find that plaintiff's brother understood that plaintiff was to be released from his liability on his note, and by reason of such understanding gave the new note, such fact alone will not entitle plaintiff to a verdict, unless the jury find that the understanding to release plaintiff was mutual.

4. It was also error to refuse to charge that the burden of proof was on plaintiff to show that it was the mutual understanding of the parties at the time of the giving of the new note that plaintiff was to be released from the old one; Comp. Laws, § 3495, providing that consent of the parties is essential to the existence of a contract.

(Opinion filed September 2, 1899.)

Appeal from circuit court, Sanborn county. Hon. FRANK B. SMITH, Judge.

Action to recover on deposit account. From a judgment in favor of plaintiff, defendant appeals. Reversed.

The facts are stated in the opinion.

*J. T. Kean* and *J. L. Hannett,* for appellant.

*J. E. Whiting* and *T. H. Null,* for respondent.

CORSON, P. J.  This was an action brought by the plaintiff against the defendant to recover $400 claimed to be due him on his deposit account with said bank. The defendant bank, prior to the commencement of this action, had applied the balance due plaintiff on his deposit account to the payment of a certain note executed by the plaintiff to the defendant on or about the 4th day of June, 1892, for the sum of $560, upon which there was paid December 31, 1892, the sum of $206.41. The defendant alleges in its answer that on or about the 13th day

of September, 1894, the defendant and the plaintiff had a settle-
ment, and that, after making certain deductions, there was
found to be due the defendant, on account of said note, $400;
that thereupon the plaintiff drew out the sum of $167.44, being
the amount of his deposit in excess of $400, and the $400 was
applied by the defendant upon the said note, and plaintiff's
account closed and balanced. The plaintiff, in reply, alleged
that the $560 note was given by him for the accommodation of
his brother, Charles Grissel, and that on or about the 8th day
of June, 1893, said Charles Grissel paid the balance of his debt,
represented by the said $560 note, to the defendant by giving to it
a certain note for $716.65, to pay said note and another debt
claimed by said defendent to be due from said Charles Grissel.
Plaintiff further alleged that said note ($716.65) was given to
said defendant, and accepted by it, in full payment and satis-
faction of the debt of the said Charles Grissel to said defendant
represented by said note of plaintiff to said bank, and for all
other indebtedness of the said Charles Grissel, and that this
last-mentioned note was secured by a real estate mortgage and
a chattel mortgage. There was a sharp conflict in the evidence,
as to the nature of the transaction resulting in the giving of the
$716.65 note, between Charles Grissel and wife on the one part,
and Charles E. Hinds and O. P. Graham, officers of the bank,
on the other. Charles Grissel and wife testified that it was un-
derstood and agreed between them and the said Hinds, as
cashier of the defendant bank, that the last note, secured by the
real estate and chattel mortgages, should cancel the $560 note
executed by the plaintiff. This was denied by both Hinds and
Graham, who testified that the new note was taken as collateral
security for the note of the plaintiff then held by the bank, and

not in payment of the same. The only question was, which of these parties correctly stated the agreement that was entered into at that time. On the trial the bank sought to show the conversations between R. J. Grissel and the bank with reference to securing extension of time, statements as to the payment of the note, and other matters connected with the same, and, the evidence being excluded, the bank made the following offer: "Defendant offers to prove by the witness Hinds that from June 8th 1893, up to September 6th, 1894, he had frequent conversations with the plaintiff in this action relative to his (the plaintiff's) indebtedness to the bank upon said note, and that in these conversations the plaintiff never denied his liability, and said he would pay the same as soon as possible." This evidence was excluded, and the defendant excepted. It appears from the evidence that the plaintiff's note remained in the bank, uncancelled, for a period of about 14 months after the transaction of June 8th, and that neither Charles nor R. J. Grissel ever demanded possession of said note, and by the offer the defendant sought to show that during all that time R. J. never denied his liability, and said he would pay the same as soon as possible.

Under these circumstances, and in view of the conflict as to what the agreement was between Charles Grissel and the officers of the bank at that time, it was certainly proper for the bank to show what conversations and negotiations were had between it and R. J. Grissel between the 8th of June, 1893, and the 1st of September, 1894, in reference to the payment of his note, and a request for an extension of the time of payment, asked for on the part of R. J. Grissel. In view of this conflict in the evidence, the jury were entitled to know how R. J. Grissel

and the bank officers had treated this note during the 14 months it remained in the bank, in order that they might come to the proper conclusion as to whether the statements of Charles Grissel and wife or those of the officers of the bank were to be believed. Had this evidence been admitted, it could have very reasonably been urged to the jury that the conduct and conversations of R. J. Grissel and the officers of the bank were entirely inconsistent with the statements made by Charles Grissel and wife as to the effect of the transaction between Charles Grissel and the bank on the 8th of June, 1893; and the jury would have had before them, not only the statements of the parties as to their understanding of the transaction, but the conversations and acts of all the parties in connection therewith, up to the time the bank appropriated $400 of R. J. Grissel's deposit in payment of the note. It appears from the evidence that R. J. Grissel was doing a mercantile business in the city of Woonsocket, where the defendant bank was located, and that Charles Grissel lived on a farm only two or three miles from town. It is fair to presume, therefore, that the transaction of June 8th, as understood by Charles Grissel, was communicated by him to his brother, R. J., and hence it was important for the jury to understand the view taken of the transaction by R. J. during the time intervening between the 8th of June, 1893, and September, 1894. We are of the opinion, therefore, that the learned circuit court erred in excluding this evidence.

Appellant further contends that the court erred in instructing the jury as follows: "When parties are making a bargain, they are held to mean and intend just what the language used by them commonly imports, as ordinarily used in reference to

the subject-matter of the contract, and not what either party may have secretly intended in his own mind;" and also in repeating, in effect, to the jury the instruction in the following language: "If his words, as commonly understood in relation to the subject-matter, import an agreement, then you must find an agreement from these words, and not what he secretly intended and meant." Counsel for appellant urge that these instructions were calculated to give the jury the impression that the court was of the opinion that the evidence as given by Charles Grissel as to the transaction of June 8, 1893, was correct, and that the cashier, Hinds, while giving Charles Grissel to understand that the new note canceled the old note, yet secretly intended in his own mind to regard the note as unpaid. There is some force in this contention. The giving of this instruction, and its repetition, certainly must have left an unfavorable impression upon the minds of the jury; and where, as in this case, the evidence was conflicting and apparently quite evenly balanced, it may have had great influence upon the jury in deciding the case in favor of the defendant. There is a strong intimation in this instruction that the cashier of the bank had some secret intention in regard to holding the note, as the language of the court must have been understood by the jury as applying entirely to the cashier of the bank. Under the evidence in this case, the instruction was not justified. There was no evidence whatever that Mr. Hinds, as cashier of the bank, had any secret intentions as to this transaction, or was guilty of any double dealing with Charles Grissel or R. J. Grissel. It is true his statement and the statement of Graham as to what occurred at the farm house of Charles Grissel, on June 8th, 1893, was in conflict with the statements made by

Charles Grissel and wife, but the court had no right to assume that he had or might have had any secret intentions as to what he meant by the language used at the time he was at the home of Charles Grissel. The only question, therefore, that could have properly been submitted to the jury, was as to what was actually said by the parties at the time of the transaction of June 8th. The court's reference to the secret intention of the cashier of the bank, and directing the attention of the jury thereto, may, and probably did, have the effect of creating a prejudice in the minds of the jury against the defendant, and its charge in that respect was erroneous. Wilkinson v. Searcy, 76 Ala. 176; Rapp v. Giddings, 4 S. D. 492, 57 N. W. 237; Wood v. Steinau, 9 S. D. 110, 68 N. W. 160; Williams v. Hartshorn, 30 Ala. 211; Miles v. Douglas, 34 Conn. 393; Roach v. Parcell, 61 Iowa, 98, 15 N. W. 866.

The appellant also contends that the court erred in refusing to give the following instructions asked for on the part of the defendant:

"If you find from the evidence in this case that Charles Grissel understood that R. J. Grissel was to be released from his liability from the note he gave said bank, and, by reason of such understanding, he gave the note and mortgages in evidence, this fact alone will not entitle this plaintiff to a verdict, unless you find as a fact, by a fair preponderance of the evidence, that the understanding to release R. J. Grissel was mutual; that is, that Mr. Hinds also understood that R. J. Grissel was to be released from his liability on said note by the giving of the Charles Grissel note and mortgages."

"The burden of proof is on the plaintiff to show, by a fair preponderance of all the evidence, that it was the mutual un-

derstanding of the parties at the time of the giving of the new note that R. J. Grissel was to be released from the old note.''

We are of the opinion that these instructions should have been given. ''It is essential to the execution of a contract that there should be:  *  *  *  (2) Their consent.  *  *  *'' Sec. 3495, Comp. Laws. ''Consent is not mutual unless the parties all agree upon the same thing in the same sense. But in certain cases, defined by the chapter on interpretation, they are to be deemed so to agree without regard to the fact.'' Sec. 3515, Id. We see no objection to these instructions, and are of the opinion that they should have been given to the jury. There could be no contract binding upon the parties unless the minds of the parties met, and, if Charles Grissel understood that the old note was to be canceled by the new note, but the bank, through its cashier, had not in fact agreed that it should be so canceled by Mr. Hinds, the cashier of the bank, then there was in fact no agreement to that effect. R. J. Grissel had the right to regard the $560 note as paid only in case there was in fact an agreement between Charles and the bank that it should be so paid by the new note. As the instructions requested evidently stated the law correctly as applicable to the facts in this case, they should have been given, and the refusal of the court to give them was error. For these errors in the exclusion of evidence, and in giving and in refusing instructions to the jury, the judgment of the court below is reversed, and a new trial granted.

HANEY, J., took no part in the decission.